UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
RYAN O'DELL,                                          :
                                                      :
          Plaintiff,                                  :  Civil Action No. 22-cv-10862
                                                      :
v.                                                    :  **COMPLAINT FOR VIOLATIONS OF**
                                                      :  **SECTIONS 14(a) AND 20(a) OF THE**
SAFEHOLD INC., JAY SUGARMAN,                          :  **SECURITIES EXCHANGE ACT OF**
DEAN S. ADLER, JESSE HOM, ROBIN                       :  **1934**
JOSEPHS, JAY S. NYDICK, and STEFAN                    :
M. SELIG,                                             :  **JURY TRIAL DEMANDED**
                                                      :
          Defendants.                                 :
---------------------------------------------------------  :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against Safehold Inc., ("Safehold or the "Company") the members Safehold's board of directors (the "Board" or the "Individual Defendants"), and iStar Inc. and affiliates ("iStar" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Safehold and iStar.

2.  Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on December 16, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Safehold will merge with and into iStar with iStar continuing as the surviving corporation as a newly formed company (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 10, 2022 (the "Merger Agreement"), each Safehold stockholder will receive one newly issued share of common stock of the new combined company for each share owned immediately prior to the effective time of the merger (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 37% of the newly combined company common stock outstanding.

3. As discussed below, Defendants have asked Safehold's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Safehold's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Safehold stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Jay Sugarman has served as a member of the Board since October 2016 and is the founder of both the Company and iStar, and is the Chairman and Chief Executive of both the Company and iStar.

11. Individual Defendant Dean Adler has served as a member of the Board since April 2017.

12. Individual Defendant Jesse Hom has served as a member of the Board since December 2021.

13. Individual Defendant Robin Josephs has served as a member of the Board since June 2017.

14.    Individual Defendant Jay Nydick has served as a member of the Board since June 2017.

15.    Individual Defendant Stefan Selig has served as a member of the Board since June 2017.

16.    Defendant Safehold is a Maryland corporation and maintains its principal offices at 1114 Avenue of the Americas, 39th Floor, New York, NY 10036.  The Company's stock trades on the New York Stock Exchange under the symbol "SAFE."

17.    The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18.    The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

19.    Safehold is revolutionizing real estate ownership by providing a new and better way for owners to unlock the value of the land beneath their buildings. Through its modern ground lease capital solution, Safehold helps owners of high quality multifamily, office, industrial, hospitality and mixed-use properties in major markets throughout the United States generate higher returns with less risk. The Company, which is taxed as a real estate investment trust (REIT) and is managed by its largest shareholder, iStar Inc., seeks to deliver safe, growing income and long-term capital appreciation to its shareholders.

20.    On August 11, 2022, the Company and iStar jointly announced the Proposed Transaction:

> NEW  YORK, Aug.  11,  2022 /PRNewswire/  -- Safehold  Inc. (NYSE: SAFE) and iStar Inc. (NYSE: STAR) jointly announced

today that the two companies have entered into a definitive agreement for a tax-free, strategic combination that will accelerate Safehold's market leadership in the ground lease industry and make Safehold the only internally-managed, pure-play ground lease company in the public markets.

**Transaction Overview**

- **Internalization of manager**: Under the terms of the transaction Safehold will internalize iStar's management team / intellectual property, replacing Safehold's external management structure. As part of the combination, Safehold will effectively assume iStar's $100 million in L+150 trust preferred securities due 2035 and Safehold will effectively issue 1.2 million new SAFE shares to iStar. The combined company ("New Safehold") will not be taking on other indebtedness or preferred equity from iStar.

- **Ownership of New Safehold**: Ownership of New Safehold will remain largely proportionate to the ownership of Safehold immediately prior to consummating this transaction and New Safehold will continue to operate under the name Safehold Inc. Safehold shareholders (other than iStar) are expected to own approximately 34% of New Safehold. iStar shareholders are expected to own approximately 37% of New Safehold directly and 14% indirectly as a result of the spin-off transaction discussed below. In conjunction with the transaction, iStar has agreed to sell SAFE shares representing 9% of SAFE shares outstanding to MSD Partners, L.P. and, separately, to settle its long-term management incentive plan obligations using its SAFE shares representing 6% of SAFE shares outstanding.

- **Spin-off transaction**: Prior to the merger, iStar will spin off to iStar shareholders a new publicly traded entity ("SpinCo") that will own all of its remaining non-ground lease assets and $400 million of its SAFE shares, enabling iStar shareholders to participate in the orderly monetization of these assets over time. SpinCo will be managed by New Safehold in exchange for a management fee.

**Strategic Benefits for Go-Forward Ground Lease Business**

The transaction will enhance Safehold's ability to grow the modern ground lease industry and unlock significant value creation for all stakeholders.

Specifically, Safehold will be strengthened by:

- **Better Structure:** Enables Safehold to internalize with the same management team who built the modern ground lease industry over

5

the past five years. It also enhances governance, widely distributes voting power, and expands the number of independent directors on the Board.

- **Better Cost & Economics:** Reduces Safehold go-forward operating costs by an estimated $25 million annually by 2026 versus projected increasing management fees and reimbursable costs in an externally managed structure. It also enables Safehold to acquire iStar's interest in the Ground Lease Plus and Leasehold Loan funds and provides for transitional management fee revenue from SpinCo.

- **Better Debt & Equity Profile:** Expands SAFE's universe of potential equity investors, given its new internalized management structure and enhanced free float and liquidity profile. It further enhances credit ratings momentum by directly addressing key rating agency concerns related to governance.

"This transaction is an important step forward in our strategy to significantly expand the use of modern ground leases in commercial real estate and further extend Safehold's position as the pre-eminent ground lease company," said Jay Sugarman, Chairman and CEO of iStar and Safehold. "By unifying all parts of our ground lease business, we will create an even stronger company, providing building owners and developers with additional modern ground lease options to meet their capital needs, generating sizable cost savings over time, expanding our shareholder base to a much wider audience, and enabling shareholders of both Safehold and iStar to participate in the future growth of the modern ground lease sector they have created."

"Since IPO, we have grown Safehold almost twenty-fold in size and now have the opportunity to make the company even stronger and expand our reach with customers, investors and credit providers," said Stefan Selig, member of Safehold's Special Committee.

"iStar has been instrumental in supporting the growth of Safehold and the modern ground lease business since Safehold's IPO and we believe this strategic transaction is the best way for iStar shareholders to capture the growing value of the business as it scales in the future," stated Barry Ridings, member of iStar's Special Committee. "iStar shareholders will continue to be the beneficiaries of Safehold's future success."

**Strategic Investment**

Concurrent with the closing of the transaction, MSD Partners will make strategic investments in both Safehold and Caret, establishing

it as one of the largest shareholders of Safehold and the largest third-party investor in Caret:

- iStar will sell 5.4 million shares of its SAFE holdings to MSD Partners for $200 million, representing a price of $37 per share, and will use the proceeds to repay debt.

- Safehold will sell 100,000 units of Caret to MSD Partners for $20 million, or $200 per unit, implying a total Caret valuation of $2 billion. The Caret units have no redemption options.

"We are delighted to support Safehold in executing this strategic transaction and are very pleased to become major shareholders of Safehold and Caret," said Coburn Packard, Partner at MSD Partners. "This investment is perfectly aligned with MSD's strategy of backing innovative, founder-led businesses in building long-term value. We have deep respect for what the Safehold management team has built and are excited about the potential to continue growing the platform and unlocking its full value."

"Adding MSD Partners, a large, sophisticated and well-respected investor, in both Safehold and Caret further demonstrates the attractiveness of Safehold's business and the unique value proposition of Safehold and Caret to Safehold shareholders," added Marcos Alvarado, President and CIO of iStar and Safehold.

**SpinCo**

iStar will contribute its remaining non-ground lease related legacy assets, the largest of which are Asbury Park and Magnolia Green, and approximately $400 million of its SAFE stock to SpinCo. By retaining certain assets and pursuing their orderly monetization, SpinCo will enable iStar shareholders to capture their potential upside value.

Additionally, SpinCo will be seeded with $50 million of cash and capitalized with a $100 million 8.0%, four-year term loan from New Safehold and up to $140 million of bank debt from Morgan Stanley Bank, N.A. which will be secured by $400 million shares of SAFE. iStar will distribute the equity interests in SpinCo to iStar shareholders on a one-for-one basis.

New Safehold will enter into a management agreement with SpinCo, under which it will continue to operate and pursue the orderly monetization of SpinCo's assets. SpinCo will pay to New Safehold an annual management fee of $25 million in year one, $15 million in year two, $10 million in year three and $5 million in year

four. This agreement will provide New Safehold time to transition its overhead and infrastructure costs.

**Additional Information Related to the Transaction**

Prior to the closing of the transaction, iStar will undergo a reverse stock split to reduce the number of iStar shares outstanding to be equal to the number of SAFE shares owned by iStar immediately prior to the merger. At closing, the shares of SAFE owned by iStar will be retired and each share of SAFE not owned by iStar will be exchanged for one share of common stock of New Safehold.

In connection with the transaction, iStar intends to retire its senior unsecured notes and cash out its preferred equity in the combination transaction using cash on hand and proceeds from asset sales and loan repayments. iStar will settle iPIP, its long-term incentive plan, using a portion of its shares of SAFE. In addition, Safehold will acquire iStar's interest in the Ground Lease Plus and Leasehold Loan funds in cash for $79 million plus any future fundings prior to closing.

Based on recent stock prices, book values and estimates on the pace of asset monetizations, each share of STAR would receive a combined implied value of approximately $18.39, comprised of interests in SpinCo with a book value of $6.48 per share and an estimated 0.27 shares of SAFE, which had a closing price of $43.45 on August 10, 2022.

The transaction is expected to close in late Q4 2022 or in Q1 2023, subject to satisfaction of closing conditions, including the approval of both iStar and Safehold shareholders and completion of the spin-off.

The transaction was unanimously approved by the independent directors of iStar and Safehold based on the unanimous recommendations of special committees of the respective boards comprised solely of independent directors.

**Advisors**

Lazard is serving as lead financial advisor and Clifford Chance US LLP is serving as legal advisor to iStar Inc. Morgan Stanley & Co. LLC is also serving as a financial advisor to iStar Inc.

J.P. Morgan is serving as exclusive financial advisor and Kirkland & Ellis LLP is serving as legal advisor to the Safehold special committee.

\* \* \*

21. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Safehold's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

22. On December 16, 2022, Safehold and iStar jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the financial advisors in their analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and iStar which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of iStar and Safehold prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view

9

about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. For the Company Projections and iStar Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2026: STAR Net Unlevered Cash Flows (including SpinCo assets), SpinCo Standalone Unlevered Operating Cash Flows, SpinCo Standalone Unlevered Cash Flows From Asset Sales, SAFE Total cash flow, and SpinCo Total cash flow, but fails to provide line items used to calculate this metric and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

25. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26. The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

27. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measures to make the non-GAAP metric included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Safehold*

28. With respect to J.P. Morgan's *Value Creation Analysis*, the Registration Statement fails to disclose: (i) the range of terminal values of the combined company; (ii) the inputs and assumptions underlying the perpetual growth rates ranging from 2.25% to 2.75%; (iii) the inputs and assumptions underlying the discount rates ranging from 7.25% to 8.25%; and (iv) the weighted average cost of capital of Safehold.

29. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

30. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

31. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

32. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

33. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

34. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

35. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. The Individual Defendants acted as controlling persons of Safehold within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Safehold, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Safehold, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

38. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

39. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Safehold, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

40. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

41. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

42. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

43. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 23, 2022                                 **MELWANI & CHAN LLP**

                                                                                  By:  */s/ Gloria Kui Melwani*

_____
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*
